**CHAVEZ & GERTLER LLP**
MARK A. CHAVEZ (Bar No. 90858)
JONATHAN E. GERTLER (Bar No. 111531)
NANCE F. BECKER (Bar No. 99292)
42 Miller Avenue
Mill Valley, California 94941
Telephone: (415) 381-5599
Facsimile:  (415) 381-5572  E-filing
Email:mark@chavezgertler.com
       jon@chavezgertler.com
       nance@chavezgertler.com

*Additional Counsel listed on signature page.*

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| JAVIER ZAMORA and LETICIA ZAMORA and DANIEL PEREZ and ELIZABETH PEREZ, | No. C 07 4603 **TEH** |
| Plaintiffs, | CLASS ACTION |
| v. | **CLASS ACTION COMPLAINT FOR:** |
| WACHOVIA CORPORATION and WORLD SAVINGS BANK, | 1. **Violations of the Equal Credit Opportunity Act;** |
| Defendants. | 2. **Violations of the Fair Housing Act;** |
| | 3. **Violations of the Civil Rights Act, 42 U.S.C. §1981; and** |
| | 4. **Violations of the Civil Rights Act, 42 U.S.C. §1982** |
| | DEMAND FOR JURY TRIAL |

ORIGINAL

1      1.      Plaintiffs JAVIER ZAMORA and LETICIA ZAMORA ("Zamora")
2   and DANIEL PEREZ and ELIZABETH PEREZ ("Perez") (together, "Plaintiffs"),
3   by and through their attorneys, bring this action against Wachovia Corporation and
4   its wholly-owned subsidiary, World Savings Bank (together, "WACHOVIA" or
5   "Defendant") seeking redress for racially discriminatory lending practices under the
6   Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq. ("ECOA"), the Fair
7   Housing Act, 42 U.S.C. § 3601 et seq ("FHA"), and the Civil Rights Act, 42 U.S.C.
8   §§ 1981 and 1982, on behalf of themselves and all others similarly situated.

9                              **INTRODUCTION**

10      2.      This class action challenges Defendant WACHOVIA's racially
11   discriminatory mortgage lending practices.  Defendant WACHOVIA has, directly
12   and through the operations of its subsidiary World Savings Bank, engaged in both
13   intentional and disparate impact discrimination through its development and
14   implementation of mortgage pricing policies and procedures that provide financial
15   incentives to its authorized loan officers, mortgage brokers and correspondent
16   lenders to make subjective decisions to increase interest rates and charge additional
17   fees and costs to minority borrowers.

18      3.      Defendant WACHOVIA's authorized loan officers, mortgage brokers
19   and correspondent lenders are given discretion – and actually encouraged and
20   incentivized – to increase interest rates and charge additional fees to certain
21   borrowers.  These policies directly lead to minorities receiving home loans with
22   higher interest rates and higher fees and costs than similarly situated non-minority
23   borrowers.

24      4.      As used in this Complaint, "minority" or "minorities" shall refer to all
25   non-Caucasians and other minority racial groups protected under 42 U.S.C. §§
26   1981, 1982, and 3604, and 15 U.S.C. § 1691.

27      5.      Plaintiffs bring this action on behalf of all minorities (hereinafter
28   collectively referred to as the "Class" or "members of the Class") who have entered

1   into residential mortgage loan contracts that were financed or purchased by

2   WACHOVIA, and who have been subjected to racial discrimination.

3       6.    Plaintiffs seek injunctive, declaratory, and equitable relief, punitive

4   damages, and other monetary and non-monetary remedies for WACHOVIA's

5   racially discriminatory conduct.

6   ## JURISDICTION AND VENUE

7       7.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which gives

8   this Court original jurisdiction over civil actions arising under federal law.

9       8.    Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because a

10  substantial part of the events giving rise to Plaintiffs' and the Class's claims

11  occurred in this District. In particular, Zamora resides in this District and World

12  Savings Bank financed Zamora's purchase of property located in this District out of

13  its offices located in this District.

14  ## PARTIES

15      9.    Plaintiffs Zamora are Latino homeowners who reside at 1165 Orchid

16  Street, Livermore, CA 94551.

17      10.    Plaintiffs Perez are Latino homeowners who reside in Laween,

18  Arizona.

19      11.    Defendant Wachovia Corporation is a diversified financial services

20  company headquartered in Charlotte, North Carolina. Wachovia Corporation and

21  its subsidiaries conduct business and maintain branches throughout the United

22  States, including in this judicial district and elsewhere in California.

23      12.    Wachovia Corporation merged with Golden West Financial Services in

24  2006. World Savings Bank, a federal savings bank which entered into the relevant

25  lending transactions with the plaintiffs, was at the time of the merger a subsidiary of

26  Golden West with offices throughout the United States including California.

27  Following the merger, World Savings became a subsidiary of Wachovia

28  Corporation. Defendants have informed consumers that they are in the process of

1  wholly integrating their banking services, and that no changes will result to the

2  terms or conditions of any outstanding loans. *See*, *e.g.*,

3  http://wachovia.com/inside/page/0,,131_10466_10469,00.html#numbers (last

4  visited August 30, 2007). On information and belief, as a result of the merger

5  Wachovia Corporation assumed all rights, obligations and liabilities arising our of

6  and related to loans made by World Savings Bank, including the loans made to the

7  Plaintiffs herein.

8                                    **FACTS**

9  **I.    HISTORICAL DISCRIMINATION IN AMERICAN MORTGAGE**

10         **LENDING**

11         13.    Racial discrimination in America's mortgage lending industry has a

12  long legacy. As this Complaint attests, that unfortunate history continues to this

13  day due to discriminatory treatment of minority borrowers by mortgage banks such

14  as WACHOVIA.

15         14.    The Joint Center for Housing Studies at Harvard University conducted

16  a study in 2005 called "The Dual Mortgage Market: The Persistence of

17  Discrimination in Mortgage Lending," which summarizes that history well. It

18  states that "[i]n the immediate post-World War II period, racial discrimination in

19  mortgage lending was easy to spot. From government-sponsored racial covenants in

20  the Federal Housing Administration (FHA) guidelines to the redlining practices of

21  private mortgage lenders and financial institutions, minorities were denied access to

22  home mortgages in ways that severely limited their ability to purchase a home.

23  Today, mortgage lending discrimination is more subtle. . . . [M]ore than three

24  decades after the enactment of national fair lending legislation, minority consumers

25  continue to have less-than-equal access to loans at the best prices and on the best

26  terms that their credit history, income, and other individual financial considerations

27  merit."

28

3

1    15.    The federal Home Mortgage Disclosure Act ("HMDA") requires
2  mortgage lenders to report information about the home loans they process each
3  year. In 2005, lenders reported information on more than 30 million home loan
4  applications pursuant to HMDA. In 1989, Congress required lenders to begin
5  disclosing information about mortgage borrowers' race and ethnicity. In 2004,
6  concerned with potential racial discrimination in loan pricing, and recognizing that
7  racial or other types of discrimination can occur when loan officers and mortgage
8  brokers have latitude in setting interest rates, the Federal Reserve Board began
9  requiring lenders to also report information concerning rates, points, and fees,
10  charged to borrowers on high-cost loans.

11    16.    HMDA data for 2004 reveals profound loan pricing disparities
12  between Hispanic borrowers and non-Hispanic whites even after controlling for
13  borrowers' gender, income, property location, and loan amount. After accounting
14  for those differences in the 2004 HMDA data, Hispanic borrowers were still almost
15  twice as likely to receive a higher-rate home loan as non-Hispanic whites.
16  (http://www.responsiblelending.org/pdfs/Testimony-Ernst061306.pdf (last viewed
17  August 14, 2007).) In a speech last year, the Vice-Chairman of the Federal Deposit
18  Insurance Corporation, Martin Gruenberg, discussed the 2004 HMDA data and
19  observed that that data "clearly indicated" that Hispanics are more likely to receive
20  high-cost home loans than are non-Hispanic whites.
21  (http://www.fdic.gov/news/news/speeches/archives/2006/chairman/spoct1806.html
22  (last viewed August 15, 2007).)

23    17.    Likewise, HMDA data for 2005 shows that "for conventional home-
24  purchase loans, the gross mean incidence of higher-priced lending was 54.7 percent
25  for blacks and 17.2 percent for non-Hispanic whites, a difference of 37.5 percentage
26  points." Id. at A159. The situation is similar for refinancings, where there is a
27  difference of 28.3 percentage points between blacks and non-Hispanic whites.
28  Avery, Brevoort, and Canner, Federal Reserve Bulletin, A124, A159.

4

18.     The Association of Community Organizations for Reform Now (ACORN) released a report entitled "The High Cost of Credit: Disparities in High-priced Refinanced Loans to Minority Homeowners in 125 American Cities," dated September 27, 2005, which found that "[i]n every metropolitan area where at least 50 refinances were made to African-American homeowners, African-Americans were more likely to receive a high-cost loan than White homeowners."

19.     Defendant WACHOVIA's lending practices are of a piece with the foregoing history.

## II.     PAST AS PROLOGUE: DEFENDANT WACHOVIA'S DISCRIMINATORY LENDING POLICIES

### A.     DEFENDANT WACHOVIA'S RELATIONSHIPS WITH ITS MORTGAGE BROKERS AND CORRESPONDENT LENDERS

20.     Defendant WACHOVIA originates and funds mortgage loans through loan officers, brokers and through a network of correspondent lenders.

21.     On information and belief, the loan officers, mortgage brokers and correspondent lenders that work with Defendant WACHOVIA broker and fund loans in collaboration with Defendant WACHOVIA, and in conformance with Defendant WACHOVIA's credit-pricing policies and procedures.

22.     Defendant WACHOVIA has followed – and continues to follow – discretionary loan pricing procedures that cause minority borrowers to pay subjective fees such as yield spread premiums and other mortgage-related finance charges at higher rates than similarly situated non-minority borrowers. Defendant WACHOVIA has intentionally discriminated against Plaintiff and Class Members through these policies and procedures – systematically giving them mortgage loans with less favorable conditions than were given to similarly situated non-minority borrowers. This pattern of discrimination is not the result of random or non-discriminatory factors. Rather, it is a direct result of Defendant WACHOVIA's mortgage lending policies and procedures.

23.    On information and belief, Defendant WACHOVIA's authorized loan officers, mortgage brokers and correspondent lenders receive part or all of their compensation from Defendant WACHOVIA based on the interest rate charged to the borrower. Defendant WACHOVIA's in-house loan officers, authorized brokers and correspondent lenders receive more compensation from Defendant WACHOVIA when they steer their clients into WACHOVIA loans with higher interest rates, and less compensation when they place their clients into WACHOVIA loans with lower interest rates.

24.    Defendant WACHOVIA intentionally and actively implements this discriminatory credit-pricing policy in a number of ways, including actively educating its loan officers and brokers about WACHOVIA's credit policies and procedures, and directing its loan officers and brokers regarding the marketing of WACHOVIA loan products. WACHOVIA's "interactive, secure Web site," INSITE, provides forms, rate calculations, and other tools for its brokers to use in marketing and arranging WACHOVIA loans to potential customers. www.wachovia.com/corp_inst/page/0,,7_21_226_786,00.html (last viewed August 20, 2007).

25.    These credit-pricing policies and procedures permit Defendant WACHOVIA's authorized loan officers, mortgage brokers and correspondent lenders subjectively to charge certain loan applicants yield spread premiums and other discretionary charges, including minority loan applicants.

26.    This pattern of discrimination cannot be justified by business necessity, and could be avoided through the use of alternative policies and procedures that have less discriminatory impact and no less business efficacy.

## B.    DEFENDANT WACHOVIA'S DISCRETIONARY CREDIT PRICING SYSTEM: DESIGNED TO DISCRIMINATE

27.    Defendant WACHOVIA discriminates through its authorized mortgage brokers. Authorized mortgage brokers act as Defendant WACHOVIA's

6

agents in originating mortgage loans.  Authorized mortgage brokers enter into

agreements with Defendant WACHOVIA to accept loan applications on behalf of

Defendant WACHOVIA; communicate to loan applicants financing terms and rates

set by Defendant WACHOVIA; tell loan applicants about Defendant

WACHOVIA's various financing options; and ultimately originate mortgage loans

funded by Defendant WACHOVIA using Defendant WACHOVIA's forms and in

accordance with Defendant WACHOVIA's policies and procedures.

28.    Likewise with Defendant WACHOVIA's authorized correspondent

lenders and loan officers, who also act as Defendant WACHOVIA's agents in

originating loans. Correspondent mortgage lenders and loan officers that work with

Defendant WACHOVIA make loans in accordance with Defendant WACHOVIA's

credit policies and procedures.  Defendant WACHOVIA funds correspondent-

generated loans before or shortly after they go to closing.

29.    Defendant WACHOVIA, then, funds loans originated by its loan

officers, authorized mortgage brokers and correspondent lenders, sets the terms and

conditions of credit on those loans, and shoulders part or all of the risk on such

loans.  Defendant WACHOVIA actively and intentionally enforces its credit

policies through its authorized loan officers, mortgage brokers and correspondent

lenders in a variety of ways.  Among other things, Defendant WACHOVIA

supplies its loan officers, correspondent lenders and mortgage brokers with an array

of loan-related forms and agreements, including loan contracts, loan applications,

and instructions on completing loan applications and contracts.  And, as noted

above, WACHOVIA actively trains its authorized brokers to follow WACHOVIA's

policies and procedures, and reinforces that training with marketing support.

30.    Once a loan applicant has provided credit information to Defendant

WACHOVIA through a loan officer, mortgage broker or correspondent lender,

Defendant WACHOVIA performs an initial objective credit analysis.  At that point,

Defendant WACHOVIA evaluates numerous risk-related credit variables, including

7

1  debt-to-income ratios, loan-to-value ratios, credit bureau histories, debt ratios,

2  bankruptcies, automobile repossessions, prior foreclosures, payment histories,

3  credit scores, and the like.

4      31.    Defendant WACHOVIA derives a risk-based financing rate from these

5  objective factors, which Defendant WACHOVIA and others in the mortgage

6  industry simply call the "par rate." (Defendant WACHOVIA's brokers and

7  correspondent lenders can also estimate the par rates by referring to an applicant's

8  credit bureau-determined credit score.)

9      32.    Although Defendant WACHOVIA's initial analysis applies objective

10  criteria to calculate this risk-related interest rate, Defendant WACHOVIA as a

11  matter of policy and procedure authorizes its loan officers, brokers and

12  correspondent lenders to mark up that rate later, and also impose additional non-

13  risk-based charges including yield spread premiums, and other discretionary fees.

14  Defendant WACHOVIA regularly communicates applicable par rates, authorized

15  yield spread premiums, and other discretionary fees to its loan officers, brokers and

16  correspondent lenders via "rate sheets" and other communications.

17      33.    Defendant WACHOVIA gives its loan officers, authorized mortgage

18  brokers and correspondent lenders discretion to impose yield spread premiums and

19  other subjective fees on borrowers.  When borrowers pay yield spread premiums,

20  Defendant WACHOVIA shares in additional income generated by the premium

21  because the yield spread premium-affected borrower is locked into a higher interest

22  rate going forward on their WACHOVIA loan than they would be if they had been

23  placed in a par rate loan without a yield spread premium.

24      34.    Defendant WACHOVIA's borrowers pay yield spread premiums and

25  other discretionary fees that inflate their finance charges not knowing that a portion

26  of their finance charges are non-risk-related.

27      35.    Defendant WACHOVIA's policies and procedures concerning the

28  assessment of yield spread premiums and other discretionary fees cause persons

8

1    with identical or similar credit scores to pay differing amounts for obtaining credit.
2    Such subjective loan pricing - which by design imposes differing finance charges
3    on persons with the same or similar credit profiles - disparately impacts Defendant
4    WACHOVIA's minority borrowers.

5        36.    While Defendant WACHOVIA's use of a common credit policy for all
6    loan applicants might appear to be racially neutral, Defendant WACHOVIA's use
7    of yield spread premiums and other discretionary fees disproportionately and
8    adversely affects minorities (relative to similarly situated non-minorities).
9    Defendant WACHOVIA's credit policy causes minorities to pay disparately more
10   discretionary finance charges than similarly situated non-minorities. As the HMDA
11   data cited herein indicates, minorities are substantially more likely than similarly
12   situated non-minorities to pay such charges.

13       37.    Defendant WACHOVIA's credit policy is in fact intentionally
14   discriminatory. As described above, Defendant WACHOVIA's credit pricing
15   policy by design discriminates against minority borrowers and directly causes this
16   disparate impact.

17   **III.    DEFENDANT WACHOVIA IMPOSED DISCRIMINATORY FEES ON**
     **PLAINTIFFS**
18

19       38.    Defendant WACHOVIA's discriminatory credit pricing policy directly
20   damaged Plaintiffs.

21   **Facts relating to Zamora:**

22       39.    In July, 2005, plaintiffs Javier and Leticia Zamora, husband and wife,
23   refinanced their home located at 1165 Orchid St., Livermore, CA. They engaged
24   the services of mortgage broker Carlos Alfaro of Allfund Mortgage, who solicited
25   them at their home, to assist them with the transaction. World Savings Bank was
26   the lender on the Zamoras' original loan and also on the refinance.

27       40.    The Zamoras purchased a 30-year, adjustable-rate mortgage loan in the
28   principal amount of $470,000 with an initial interest rate of 6.142% (an APR of

9

1  6.253%). In connection with this transaction, the Zamoras were required to pay

2  Universal Home Loans a "mortgage broker fee" of $5,450.00 paid out of the

3  proceeds of the loan, *and* a "broker fee" of $9,400.00 which was paid outside of

4  closing (POC). The Zamoras also paid several hundred dollars in loan processing

5  fees to World Savings. On information and belief, the broker fees were assessed

6  pursuant to Defendant WACHOVIA's standard credit pricing policies.

7      41.    The Zamoras are primarily Spanish-speaking, and WACHOVIA knew

8  that they were minority borrowers. Among other things, Mr. Alfaro had told them

9  that he was a Christian who was trying to help Latinos get better loans.

10  **Facts relating to Perez:**

11      42.    In March-April 2007, plaintiffs Daniel and Elizabeth Perez, husband

12  and wife, refinanced their residence located at 11926 S. 38th Ave., Laween, Arizona

13  85339. Approximately $339,000 of the proceeds were used to pay off Perez's prior

14  mortgage with M&I Marshall & Ilsley Bank, and $83,000 was used to satisfy other

15  debts. They engaged the services of a mortgage broker, Spectrum Financial, to

16  assist them with the transaction. World Savings Bank refinanced and funded the

17  loan.

18      43.    Perez purchased a loan in the principal amount of $423,750. In

19  addition to hundreds of dollars in "redrawing" and processing fees paid to World

20  Savings, Perez was charged a $998.00 "mortgage broker fee" which was paid to

21  Spectrum Financial out of the proceeds of the loan, and a "broker fee" of $8,475.00

22  – 2% of the proceeds – which paid out of closing.

23      44.    Mr. and Mrs. Perez also refinanced a second loan secured by their

24  property located at 3841 E. Calle Poco, Laween, AZ 85339. Of the $343,000

25  principal amount of this loan, approximately $175,000 was to pay off the Perez's

26  prior loan with National Bank of Arizona. In connection with this transaction,

27  Perez was required to pay a $3,430.00 "loan origination fee," a $498 "processing

28  fee," and a $75 "broker application fee" to Core Mortgage LLC. The HUD-1

1 | Settlement Statement associated with the transaction states that the lender also paid
2 | a $2,572.50 "yield spread" premium to Core Mortgage outside of the closing.

3 |     45.    Mr. and Mrs. Perez are primarily Spanish-speaking, and WACHOVIA
4 | knew that they were minority borrowers.

5 |     46.    As a result of Defendant WACHOVIA's discriminatory conduct,
6 | Plaintiffs received loans on worse terms with higher costs than similarly situated
7 | non-minority borrowers.

8 |                        **CLASS ACTION ALLEGATIONS**

9 |     47.    Plaintiffs repeat and re-allege each allegation above as if set forth
10 | herein in full.

11 |     48.    This class action is brought pursuant to ECOA, the FHA and the Civil
12 | Rights Act by Plaintiffs on behalf of themselves and all minority borrowers (the
13 | "Class") who entered into residential mortgage loan contracts that were financed or
14 | purchased by Defendant WACHOVIA, and who were harmed by Defendant's
15 | discriminatory conduct.

16 |     49.    Plaintiffs sue on their own behalf, and on behalf of a class of persons
17 | under Rule 23(a) and (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure.

18 |     50.    Plaintiffs do not know the exact size of the Class or identities of the
19 | members of the Class, since that information is in the exclusive control of
20 | Defendant WACHOVIA.  Plaintiffs believe that the Class includes many thousands,
21 | or tens of thousands of individuals, who are geographically dispersed throughout
22 | the United States. Therefore, the Class is so numerous that joinder of all members is
23 | impracticable.

24 |     51.    All members of the Class have been subjected to and affected by
25 | Defendant WACHOVIA's practice of assessing yield spread premiums and other
26 | discretionary fees on mortgage loans. There are questions of law and fact that are
27 | common to the Class, and that predominate over any questions affecting only

28 |

11

individual members of the Class. These questions include, but are not limited to the following:

a.   the nature and scope of Defendant WACHOVIA's policies and procedures concerning the assessment of yield spread premiums and other discretionary fees on mortgage loans it funds;

b.   whether Defendant WACHOVIA discriminated against Class Members by charging them higher interest, fees, and costs, than Defendant WACHOVIA charges similarly situated non-minority borrowers;

c.   whether Defendant WACHOVIA's intent in its discriminatory policies and procedures was racially motivated;

d.   whether Defendant WACHOVIA can articulate any legitimate non-discriminatory reason for its policies and procedures;

e.   whether Defendant WACHOVIA and its subsidiaries are creditors under the ECOA because, in the ordinary course of business, they participate in the decision of whether or not to extend credit to consumers;

f.   whether Defendant WACHOVIA's policies and procedures regarding yield spread premiums and other discretionary fees have a disparate impact on minority borrowers;

g.   whether Defendant WACHOVIA has any business justification for its policies and procedures.

h.   whether there is a less discriminatory alternative to these policies and procedures;

12

i.    whether Defendant WACHOVIA devised and deployed a scheme or common course of conduct that acted to deceive Plaintiffs and members of the Class;

j.    whether the Court can enter declaratory and injunctive relief; and

k.    the proper measure of disgorgement or monetary relief.

52.    Plaintiffs' claims are typical of the claims of the Class, and do not conflict with the interests of any other members of the Class in that both Plaintiffs, and the other members of the Class, were subjected to the same yield spread premiums and other discretionary fees that have disproportionately affected minority borrowers.

53.    Plaintiffs will fairly and adequately represent the interests of the Class. Plaintiffs are committed to vigorous prosecution of the Class's claims, and have retained attorneys who have extensive experience in consumer protection and credit discrimination actions and in class actions.

54.    Defendant WACHOVIA has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

55.    A class action is superior to other methods for the speedy and efficient adjudication of this controversy. A class action regarding the issues in this case does not create any problems of manageability.

## ACCRUAL, FRAUDULENT CONCEALMENT, CONTINUING VIOLATION, AND EQUITABLE TOLLING

56.    Plaintiffs and Class Members did not know, and could not reasonably have known, that they would receive from Defendant WACHOVIA mortgage loans with worse terms and higher costs and fees than non-minorities.  Their claims did not accrue until shortly before the filing of this action.

1    57.    Defendant WACHOVIA's discriminatory conduct was inherently self-
2   concealing. Defendant WACHOVIA knew that Plaintiffs and Class Members
3   could not determine the relationship between the terms, fees, and costs of their
4   loans to those available to non-minorities, or to the services that WACHOVIA and
5   its contracted mortgage brokers provided. Defendant WACHOVIA has superior
6   knowledge about the terms, fees, and costs of its loans, and knew that the terms,
7   fees and costs provided to minorities, unbeknownst to them, were substantially
8   worse than the loans provided to non-minorities.

9    58.    Defendant WACHOVIA has not released or provided information
10   about its discrimination against Plaintiffs and Class Members, and has actively and
11   fraudulently concealed its discriminatory practices.

12    59.    As a result of the foregoing, Plaintiffs and Class Members in the
13   exercise of due diligence could not have reasonably discovered the discriminatory
14   practices, and did not do so until just recently. For the reasons alleged above, the
15   members of the Class still do not know that they have been and continue to be
16   injured by Defendant WACHOVIA's discriminatory conduct.

17    60.    Defendant WACHOVIA's discriminatory conduct is continuing in
18   nature, and Defendant WACHOVIA has committed discriminatory acts throughout
19   the limitations period. Class members whose loans include higher interest rates due
20   to WACHOVIA's discrimination continue to be harmed every time an interest
21   payment becomes due on such loans. Other Class members have contracted with
22   WACHOVIA, and been subject to the identical discriminatory practices, within the
23   applicable period of limitations.

24    61.    There is a substantial nexus between the acts of discrimination
25   occurring within the limitation periods prior to filing suit, and the acts of
26   discrimination before that time. The acts involve the same type of discrimination
27   and are recurring, not isolated events.

28

14

1    62.    Defendant WACHOVIA specifically misled Plaintiffs and Class

2   Members into believing that the mortgage-related terms, fees, and costs they were

3   offered were fair, reasonable, and the same as offered to non-minorities, and took

4   steps to conceal its fraudulent and unfair conduct.

5    63.    The statute of limitations applicable to any claims that Plaintiffs or

6   other Class Members have brought or could bring as a result of the unlawful and

7   fraudulent concealment and course of conduct described herein, have been tolled as

8   a result of Defendant WACHOVIA's fraudulent concealment.  In addition,

9   Plaintiffs and the Class did not and could not have discovered their causes of action

10   until the time alleged below, thereby tolling any applicable statute of limitations.

11                            **COUNT I**

12        **VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT**

13                      **(15 U.S.C. §§ 1691 - 1691f)**

14    64.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1

15   through 63 above as if fully set forth herein.

16    65.    Defendant WACHOVIA engages in credit transactions through its

17   offering, granting, and purchasing of residential mortgage loans.

18    66.    By imposing higher interest rates and other discretionary fees on

19   residential mortgage loans to Plaintiffs and Class Members than it imposed on non-

20   minority mortgage borrowers, Defendant WACHOVIA has discriminated against

21   Plaintiffs and members of the Class with respect to a credit transaction on the basis

22   of race in violation of the ECOA.  15 U.S.C. § 1691(a).

23    67.    In addition, Defendant WACHOVIA's pricing policies and procedures

24   (including yield spread premiums), which provide financial incentives to its

25   mortgage brokers and correspondent lenders to make subjective decisions to

26   increase interest rates and charge additional fees and costs, have a disparate impact

27   on Plaintiffs and Class Members.

28

15

68.    As a proximate result of Defendant WACHOVIA's violation of 15 U.S.C. § 1691, Plaintiffs and members of the Class have been injured and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.

69.    In addition, Defendant WACHOVIA's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence.  Defendant WACHOVIA acted with malice and reckless indifference to the federally protected rights of Plaintiffs and members of the Class.  As a result, Plaintiffs and members of the Class are entitled to punitive damages.

70.    Moreover, Defendant WACHOVIA continues to discriminate in violation of the ECOA against Class Members every time Defendant WACHOVIA provides a home mortgage loan as described herein.  If not enjoined from such violation by the Court, Defendant WACHOVIA will continue to engage in conduct that disregards the rights of Plaintiffs and members of the Class, and cause Plaintiffs and members of the Class irreparable injury for which there is no adequate remedy at law.  15 U.S.C. § 1691(e).

71.    Plaintiffs and members of the Class ask this Court to declare the rights of the parties herein regarding Defendant WACHOVIA's obligation to participate in credit transactions without discriminating against applicants for credit on the basis of the applicants' race.

<div align="center">

**COUNT II**

**RACIAL DISCRIMINATION**

**(42 U.S.C. § 1981)**

</div>

72.    Plaintiffs repeat, re-allege, and incorporate the allegations contained in paragraphs 1 through 63 above as if fully set forth herein.

/ / /

/ / /

1    73.    Defendant WACHOVIA intentionally discriminated against Plaintiffs

2  and Class Members by charging higher interest rates and other fees and costs than

3  were charged to similarly situated non-minority borrowers.

4    74.    Defendant WACHOVIA unlawfully discriminated against Plaintiffs

5  and Class Members in (i) formation of contracts, (ii) making, performance,

6  modification, and termination of contracts, (iii) the enjoyment of all benefits,

7  privileges, terms and conditions of the contractual relationship, and/or (iv) conduct

8  that interferes with the right to establish and enforce contract obligations.

9    75.    Defendant WACHOVIA's actions violate 42 U.S.C. § 1981, as well as

10  the rights of Plaintiffs and the Class under the Fifth, Thirteenth, and Fourteenth

11  Amendments to the Constitution of the United States.

12    76.    Plaintiffs and Class Members are entitled to injunctive and declaratory

13  relief and damages, or make whole equitable relief as a result of Defendant

14  WACHOVIA's discriminatory conduct.

15    77.    At no time has Defendant WACHOVIA undertaken corrective action

16  to ameliorate its racially discriminatory practices. Defendant WACHOVIA

17  continues to reap the profits of its discriminatory practices and continues to

18  discriminate. Defendant WACHOVIA's conduct as alleged herein was intentional,

19  willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond

20  mere negligence. Defendant WACHOVIA has acted with malice and reckless

21  indifference to the federally protected rights of Plaintiffs and members of the Class.

22  As a result, Plaintiffs and members of the Class are entitled to punitive damages.

23  ### COUNT III

24  ### RACIAL DISCRIMINATION

25  ### (42 U.S.C. § 1982)

26    78.    Plaintiffs repeat, re-allege, and incorporate the allegations contained in

27  paragraphs 1 through 63 above as if fully set forth herein.

28  / / /

17

79.    Section 42 U.S.C. §1982 provides that all citizens of the United States "shall have the same right, in every State and Territory, as is enjoyed by White citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

80.    Defendant WACHOVIA has discriminated against Plaintiffs and the Class with respect to their home mortgage loans by charging Plaintiffs and the Class higher interest rates and other discretionary fees than Defendant WACHOVIA has charged similarly situated non-minority consumers.  As a result of Defendant WACHOVIA's conduct, Plaintiffs and the Class have not had the same right as Caucasians to inherit, purchase, sell, hold, and convey real property. Defendant WACHOVIA has thereby violated 42 U.S.C. § 1982.

81.    Defendant WACHOVIA's violation of 42 U.S.C. § 1982 was intentional and malicious.

82.    As a proximate result of Defendant WACHOVIA's violation of 42 U.S.C. § 1982, Plaintiffs and members of the Class have been injured, and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.  In addition, Defendant WACHOVIA's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence.  Defendant WACHOVIA acted with malice and reckless indifference to the federally protected rights of Plaintiffs and members of the Class.  As a result, Plaintiffs and members of the Class are entitled to punitive damages.

## COUNT IV

## VIOLATION OF THE FAIR HOUSING ACT

### (42 U.S.C. §§ 3601 – 3619)

83.    Plaintiffs repeat, re-allege and incorporate the allegations in paragraphs 1 through 63 above as if fully set forth herein.

/ / /

18

84.    Mortgage lending and the providing of residential mortgage loans is a "residential real estate-related transaction" within the meaning of the FHA. 42 U.S.C. § 3605(b).

85.    By imposing higher interest rates and other discretionary fees on residential mortgage loans to Plaintiffs and Class Members than it imposed on non-minority mortgage borrowers, Defendant WACHOVIA has discriminated against Plaintiffs and members of the Class concerning their ability to participate in real estate-related transactions, and in the terms and conditions of such transactions, in violation of the FHA. 42 U.S.C. § 3605(a).

86.    In addition, Defendant WACHOVIA's pricing policies and procedures (including yield spread premiums), which provide financial incentives to its mortgage brokers and correspondent lenders to make subjective decisions to increase interest rates and charge additional fees and costs, had a disparate impact upon Plaintiffs and Class Members.

87.    As a proximate result of Defendant WACHOVIA's violation of 42 U.S.C. § 3605, Plaintiffs and members of the Class have been injured and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.

88.    In addition, Defendant WACHOVIA's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence. Defendant WACHOVIA acted with malice and reckless indifference to the federally protected rights of Plaintiffs and members of the Class. As a result, Plaintiffs and members of the Class are entitled to punitive damages.

89.    Moreover, Defendant WACHOVIA continues to discriminate in violation of the FHA against members of the Class every time Defendant WACHOVIA provides a home mortgage loan as described herein. If not enjoined from such violation by the Court, Defendant WACHOVIA will continue to engage

1  in conduct that disregards the rights of Plaintiffs and members of the Class, and
2  cause Plaintiffs and members of the Class irreparable injury for which there is no
3  adequate remedy at law.  42 U.S.C. § 3613(c).

4      90.    Plaintiffs and members of the Class ask this Court to declare the rights
5  of the parties herein regarding Defendant WACHOVIA's obligation to participate
6  in credit transactions without discriminating against applicants for credit on the
7  basis of the applicants' race.

8  <center>**COUNT IV**</center>

9  <center>**PRAYER FOR RELIEF**</center>

10      WHEREFORE PREMISES CONSIDERED, Plaintiffs request the following
11  relief:

12      A.    An order determining that the action is a proper class action pursuant
13  to Rule 23 of the Federal Rules of Civil Procedure;

14      B.    A judgment awarding Plaintiffs and Class Members costs and
15  disbursements incurred in connection with this action, including reasonable
16  attorneys' fees, expert witness fees and other costs;

17      C.    A judgment granting extraordinary equitable and/or injunctive relief as
18  permitted by law or equity, including rescission, restitution, reformation, attaching,
19  impounding, or imposing a constructive trust upon, or otherwise restricting, the
20  proceeds of Defendant's ill-gotten funds to ensure that Plaintiffs and Class
21  Members have an effective remedy;

22      D.    A judgment awarding Plaintiffs and Class Members compensatory
23  damages according to proof;

24      E.    A judgment awarding punitive damages to Plaintiffs and Class
25  Members;

26      F.    A judgment granting declaratory and injunctive relief and all relief that
27  flows from such injunctive and declaratory relief; and

28

<center>20</center>

1        G.    A judgment or other order granting such other and further relief as the

2    Court deems just and proper including, but not limited to, recessionary relief and

3    reformation.

4        DATED this 5ᵗʰ day of September, 2007.

5                    Respectfully submitted,

6                    CHAVEZ & GERTLER, L.L.P.

7

8                    BONNETT, FAIRBOURN, FRIEDMAN
                       & BALINT, P.C.

9

10                   LERACH, COUGHLIN, STOIA, GELLER
                       RUDMAN & ROBBINS, LLP

11

12                   HOUSING AND ECONOMIC RIGHTS
                       ADVOCATES

13

14

15                   By:  Nance F. Becker

16                   Attorneys for Plaintiffs

17

18                 **JURY TRIAL DEMANDED**

19       Plaintiffs demand a trial by jury on all issues so triable.

20       DATED this 5ᵗʰ day of September, 2007.

21   Dated: September 5, 2007        Respectfully submitted,

22                   CHAVEZ & GERTLER, L.L.P.

23

24                   BONNETT, FAIRBOURN, FRIEDMAN
                       & BALINT, P.C.

25

26                   LERACH, COUGHLIN, STOIA, GELLER
                       RUDMAN & ROBBINS, LLP

27

28                   HOUSING AND ECONOMIC RIGHTS

21

1

ADVOCATES

2

3

*Nance Becker*

4

By: Nance F. Becker

5

Attorneys for Plaintiffs

6

*Additional Counsel:*

7

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.

8

Andrew S. Friedman (to seek pro hac vice admission)

Wendy J. Harrison (CA 151090)

9

2901 North Central Avenue, Suite 1000

10

Phoenix, Arizona 85012

Telephone: (602) 274-1100

11

LERACH, COUGHLIN, STOIA, GELLER

12

RUDMAN & ROBBINS, LLP

John Stoia (CA SBN 141757)

13

Ted Pintar (CA SBN131372)

14

655 W. Broadway, Suite 1900

San Diego, CA 92101

15

Telephone: (619) 231-1058

16

Maeve Elise Brown (CA SBN 137512)

17

HOUSING AND ECONOMIC RIGHTS ADVOCATES

P.O. Box 29435, Oakland, CA 94604

18

1305 Franklin St., Ste. 305, Oakland CA 94612

Telephone: 510-271-8443

19

20

21

22

23

24

25

26

27

28

22