1  **CHAVEZ & GERTLER LLP**
   MARK A. CHAVEZ (Bar No. 90858)
2  JONATHAN E. GERTLER (Bar No. 111531)
   NANCE F. BECKER (Bar No. 99292)
3  42 Miller Avenue
   Mill Valley, California 94941
4  Telephone: (415) 381-5599
   Facsimile: (415) 381-5572
5  Email:mark@chavezgertler.com
        jon@chavezgertler.com
6        nance@chavezgertler.com

7  *Additional Counsel listed on signature page.*

8  Attorneys for Plaintiffs

9  ### IN THE UNITED STATES DISTRICT COURT

10 ### FOR THE NORTHERN DISTRICT OF CALIFORNIA

11 ### SAN FRANCISCO/OAKLAND DIVISION

12 LETICIA ZAMORA and DANIEL         ) No. 3:07-CV-4603
   PEREZ and ELIZABETH PEREZ,        )
13                                   )
              Plaintiffs,            ) CLASS ACTION
14                                   )
                                     ) **FIRST AMENDED CLASS**
15 v.                                ) **ACTION COMPLAINT**
                                     ) **FOR:**
16                                   )
   WACHOVIA CORPORATION and          ) 1. **Violations of the Equal Credit**
17 WORLD SAVINGS BANK,               )    **Opportunity Act;**
                                     )
18            Defendants.            ) 2. **Violations of the Fair Housing Act;**
                                     )
19                                   ) 3. **Violations of the Civil Rights Act,**
                                     )    **42 U.S.C. §1981; and**
20                                   )
                                     ) 4. **Violations of the Civil Rights Act,**
21                                   )    **42 U.S.C. §1982**
                                     )
22                                   )
                                     )
23 _____ ) DEMAND FOR JURY TRIAL

24

25

26

27

28

1.    Plaintiffs LETICIA ZAMORA ("Zamora"), DANIEL PEREZ and ELIZABETH PEREZ ("Perez") (together, "Plaintiffs"), by and through their attorneys, bring this action against Wachovia Corporation and its wholly-owned subsidiary, World Savings Bank (together, "WACHOVIA" or "Defendant") seeking redress for racially discriminatory lending practices under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq. ("ECOA"), the Fair Housing Act, 42 U.S.C. § 3601 et seq ("FHA"), and the Civil Rights Act, 42 U.S.C. §§ 1981 and 1982, on behalf of themselves and all others similarly situated.

## INTRODUCTION

2.    This class action challenges Defendant WACHOVIA's racially discriminatory mortgage lending practices.  Defendant WACHOVIA has, directly and through the operations of its subsidiary World Savings Bank, engaged in both intentional and disparate impact discrimination through its development and implementation of mortgage pricing policies and procedures that provide financial incentives to its authorized loan officers, mortgage brokers and correspondent lenders to make subjective decisions to increase interest rates and charge additional fees and costs to minority borrowers.

3.    Defendant WACHOVIA's authorized loan officers, mortgage brokers and correspondent lenders are given discretion – and actually encouraged and incentivized – to increase interest rates and charge additional fees to certain borrowers.  These policies directly lead to minorities receiving home loans with higher interest rates and higher fees and costs than similarly situated non-minority borrowers.

4.    As used in this Complaint, "minority" or "minorities" shall refer to all non-Caucasians and other minority racial groups protected under 42 U.S.C. §§ 1981, 1982, and 3604, and 15 U.S.C. § 1691.

5.    Plaintiffs bring this action on behalf of all minorities (hereinafter collectively referred to as the "Class" or "members of the Class") who have entered

1

1  into residential mortgage loan contracts that were financed or purchased by

2  WACHOVIA, and who have been subjected to racial discrimination.

3       6.    Plaintiffs seek injunctive, declaratory, and equitable relief, punitive

4  damages, and other monetary and non-monetary remedies for WACHOVIA's

5  racially discriminatory conduct.

6                     **JURISDICTION AND VENUE**

7       7.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which gives

8  this Court original jurisdiction over civil actions arising under federal law.

9       8.    Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because a

10  substantial part of the events giving rise to Plaintiffs' and the Class's claims

11  occurred in this District.  In particular, Zamora resides in this District and World

12  Savings Bank financed Zamora's purchase of property located in this District out of

13  its offices located in this District.

14                            **PARTIES**

15       9.    Plaintiff Zamora is a Latino homeowner who resides at 1165 Orchid

16  Street, Livermore, CA 94551.

17       10.    Plaintiffs Perez are Latino homeowners who reside in Laween,

18  Arizona.

19       11.    Defendant Wachovia Corporation is a diversified financial services

20  company headquartered in Charlotte, North Carolina.  Wachovia Corporation and

21  its subsidiaries conduct business and maintain branches throughout the United

22  States, including in this judicial district and elsewhere in California.

23       12.    Wachovia Corporation merged with Golden West Financial Services in

24  2006.  World Savings Bank, a federal savings bank which entered into the relevant

25  lending transactions with the plaintiffs, was at the time of the merger a subsidiary of

26  Golden West with offices throughout the United States including California.

27  Following the merger, World Savings became a subsidiary of Wachovia

28  Corporation.  Defendants have informed consumers that they are in the process of

1   wholly integrating their banking services, and that no changes will result to the

2   terms or conditions of any outstanding loans.  *See, e.g.,*

3   http://wachovia.com/inside/page/0,,131_10466_10469,00.html#numbers (last

4   visited August 30, 2007).  On information and belief, as a result of the merger

5   Wachovia Corporation assumed all rights, obligations and liabilities arising our of

6   and related to loans made by World Savings Bank, including the loans made to the

7   Plaintiffs herein.

8                                          **FACTS**

9   **I.     HISTORICAL DISCRIMINATION IN AMERICAN MORTGAGE**

10  **LENGING**

11          13.    Racial discrimination in America's mortgage lending industry has a

12  long legacy.  As this Complaint attests, that unfortunate history continues to this

13  day due to discriminatory treatment of minority borrowers by mortgage banks such

14  as WACHOVIA.

15          14.    The Joint Center for Housing Studies at Harvard University conducted

16  a study in 2005 called "The Dual Mortgage Market: The Persistence of

17  Discrimination in Mortgage Lending," which summarizes that history well.  It

18  states that "[i]n the immediate post-World War II period, racial discrimination in

19  mortgage lending was easy to spot. From government-sponsored racial covenants in

20  the Federal Housing Administration (FHA) guidelines to the redlining practices of

21  private mortgage lenders and financial institutions, minorities were denied access to

22  home mortgages in ways that severely limited their ability to purchase a home.

23  Today, mortgage lending discrimination is more subtle. . . . [M]ore than three

24  decades after the enactment of national fair lending legislation, minority consumers

25  continue to have less-than-equal access to loans at the best prices and on the best

26  terms that their credit history, income, and other individual financial considerations

27  merit."

28

                                              3

15.    The federal Home Mortgage Disclosure Act ("HMDA") requires mortgage lenders to report information about the home loans they process each year. In 2005, lenders reported information on more than 30 million home loan applications pursuant to HMDA. In 1989, Congress required lenders to begin disclosing information about mortgage borrowers' race and ethnicity. In 2004, concerned with potential racial discrimination in loan pricing, and recognizing that racial or other types of discrimination can occur when loan officers and mortgage brokers have latitude in setting interest rates, the Federal Reserve Board began requiring lenders to also report information concerning rates, points, and fees, charged to borrowers on high-cost loans.

16.    HMDA data for 2004 reveals profound loan pricing disparities between Hispanic borrowers and non-Hispanic whites even after controlling for borrowers' gender, income, property location, and loan amount. After accounting for those differences in the 2004 HMDA data, Hispanic borrowers were still almost twice as likely to receive a higher-rate home loan as non-Hispanic whites. (http://www.responsiblelending.org/pdfs/Testimony-Ernst061306.pdf (last viewed August 14, 2007).) In a speech last year, the Vice-Chairman of the Federal Deposit Insurance Corporation, Martin Gruenberg, discussed the 2004 HMDA data and observed that that data "clearly indicated" that Hispanics are more likely to receive high-cost home loans than are non-Hispanic whites. (http://www.fdic.gov/news/news/speeches/archives/2006/chairman/spoct1806.html (last viewed August 15, 2007).)

17.    Likewise, HMDA data for 2005 shows that "for conventional home-purchase loans, the gross mean incidence of higher-priced lending was 54.7 percent for blacks and 17.2 percent for non-Hispanic whites, a difference of 37.5 percentage points." Id. at A159. The situation is similar for refinancings, where there is a difference of 28.3 percentage points between blacks and non-Hispanic whites. Avery, Brevoort, and Canner, Federal Reserve Bulletin, A124, A159.

4

1    18.    The Association of Community Organizations for Reform Now

2    (ACORN) released a report entitled "The High Cost of Credit: Disparities in High-

3    priced Refinanced Loans to Minority Homeowners in 125 American Cities," dated

4    September 27, 2005, which found that "[i]n every metropolitan area where at least

5    50 refinances were made to African-American homeowners, African-Americans

6    were more likely to receive a high-cost loan than White homeowners."

7    19.    Defendant WACHOVIA's lending practices are of a piece with the

8    foregoing history.

9    **II.    PAST AS PROLOGUE: DEFENDANT WACHOVIA'S
        DISCRIMINATORY LENDING POLICIES**

10

11    **A.    DEFENDANT WACHOVIA'S RELATIONSHIPS WITH ITS
        MORTGAGE BROKERS AND CORRESPONDENT LENDERS**

12

13    20.    Defendant WACHOVIA originates and funds mortgage loans through

14    loan officers, brokers and through a network of correspondent lenders.

15    21.    On information and belief, the loan officers, mortgage brokers and

16    correspondent lenders that work with Defendant WACHOVIA broker and fund

17    loans in collaboration with Defendant WACHOVIA, and in conformance with

18    Defendant WACHOVIA's credit-pricing policies and procedures.

19    22.    Defendant WACHOVIA has followed – and continues to follow –

20    discretionary loan pricing procedures that cause minority borrowers to pay

21    subjective fees such as yield spread premiums and other mortgage-related finance

22    charges at higher rates than similarly situated non-minority borrowers.  Defendant

23    WACHOVIA has intentionally discriminated against Plaintiff and Class Members

24    through these policies and procedures – systematically giving them mortgage loans

25    with less favorable conditions than were given to similarly situated non-minority

26    borrowers.  This pattern of discrimination is not the result of random or non-

27    discriminatory factors.  Rather, it is a direct result of Defendant WACHOVIA's

28    mortgage lending policies and procedures.

23.     On information and belief, Defendant WACHOVIA's authorized loan officers, mortgage brokers and correspondent lenders receive part or all of their compensation from Defendant WACHOVIA based on the interest rate charged to the borrower.  Defendant WACHOVIA's in-house loan officers, authorized brokers and correspondent lenders receive more compensation from Defendant WACHOVIA when they steer their clients into WACHOVIA loans with higher interest rates, and less compensation when they place their clients into WACHOVIA loans with lower interest rates.

24.     Defendant WACHOVIA intentionally and actively implements this discriminatory credit-pricing policy in a number of ways, including actively educating its loan officers and brokers about WACHOVIA's credit policies and procedures, and directing its loan officers and brokers regarding the marketing of WACHOVIA loan products.  WACHOVIA's "interactive, secure Web site," INSITE, provides forms, rate calculations, and other tools for its brokers to use in marketing and arranging WACHOVIA loans to potential customers. www.wachovia.com/corp_inst/page/0,,7_21_226_786,00.html (last viewed August 20, 2007).

25.     These credit-pricing policies and procedures permit Defendant WACHOVIA's authorized loan officers, mortgage brokers and correspondent lenders subjectively to charge certain loan applicants yield spread premiums and other discretionary charges, including minority loan applicants.

26.     This pattern of discrimination cannot be justified by business necessity, and could be avoided through the use of alternative policies and procedures that have less discriminatory impact and no less business efficacy.

/ / /

/ / /

/ / /

/ / /

## B.    DEFENDANT WACHOVIA'S DISCRETIONARY CREDIT PRICING SYSTEM: DESIGNED TO DISCRIMINATE

27.    Defendant WACHOVIA discriminates through its authorized mortgage brokers.  Authorized mortgage brokers act as Defendant WACHOVIA's agents in originating mortgage loans.  Authorized mortgage brokers enter into agreements with Defendant WACHOVIA to accept loan applications on behalf of Defendant WACHOVIA; communicate to loan applicants financing terms and rates set by Defendant WACHOVIA; tell loan applicants about Defendant WACHOVIA's various financing options; and ultimately originate mortgage loans funded by Defendant WACHOVIA using Defendant WACHOVIA's forms and in accordance with Defendant WACHOVIA's policies and procedures.

28.    Likewise with Defendant WACHOVIA's authorized correspondent lenders and loan officers, who also act as Defendant WACHOVIA's agents in originating loans. Correspondent mortgage lenders and loan officers that work with Defendant WACHOVIA make loans in accordance with Defendant WACHOVIA's credit policies and procedures.  Defendant WACHOVIA funds correspondent-generated loans before or shortly after they go to closing.

29.    Defendant WACHOVIA, then, funds loans originated by its loan officers, authorized mortgage brokers and correspondent lenders, sets the terms and conditions of credit on those loans, and shoulders part or all of the risk on such loans. Defendant WACHOVIA actively and intentionally enforces its credit policies through its authorized loan officers, mortgage brokers and correspondent lenders in a variety of ways.  Among other things, Defendant WACHOVIA supplies its loan officers, correspondent lenders and mortgage brokers with an array of loan-related forms and agreements, including loan contracts, loan applications, and instructions on completing loan applications and contracts. And, as noted above, WACHOVIA actively trains its authorized brokers to follow WACHOVIA's policies and procedures, and reinforces that training with marketing support.

30. Once a loan applicant has provided credit information to Defendant WACHOVIA through a loan officer, mortgage broker or correspondent lender, Defendant WACHOVIA performs an initial objective credit analysis. At that point, Defendant WACHOVIA evaluates numerous risk-related credit variables, including debt-to-income ratios, loan-to-value ratios, credit bureau histories, debt ratios, bankruptcies, automobile repossessions, prior foreclosures, payment histories, credit scores, and the like.

31. Defendant WACHOVIA derives a risk-based financing rate from these objective factors, which Defendant WACHOVIA and others in the mortgage industry simply call the "par rate." (Defendant WACHOVIA's brokers and correspondent lenders can also estimate the par rates by referring to an applicant's credit bureau-determined credit score.)

32. Although Defendant WACHOVIA's initial analysis applies objective criteria to calculate this risk-related interest rate, Defendant WACHOVIA as a matter of policy and procedure authorizes its loan officers, brokers and correspondent lenders to mark up that rate later, and also impose additional non-risk-based charges including yield spread premiums, and other discretionary fees. Defendant WACHOVIA regularly communicates applicable par rates, authorized yield spread premiums, and other discretionary fees to its loan officers, brokers and correspondent lenders via "rate sheets" and other communications.

33. Defendant WACHOVIA gives its loan officers, authorized mortgage brokers and correspondent lenders discretion to impose yield spread premiums and other subjective fees on borrowers. When borrowers pay yield spread premiums, Defendant WACHOVIA shares in additional income generated by the premium because the yield spread premium-affected borrower is locked into a higher interest rate going forward on their WACHOVIA loan than they would be if they had been placed in a par rate loan without a yield spread premium.

34.    Defendant WACHOVIA's borrowers pay yield spread premiums and other discretionary fees that inflate their finance charges not knowing that a portion of their finance charges are non-risk-related.

35.    Defendant WACHOVIA's policies and procedures concerning the assessment of yield spread premiums and other discretionary fees cause persons with identical or similar credit scores to pay differing amounts for obtaining credit. Such subjective loan pricing - which by design imposes differing finance charges on persons with the same or similar credit profiles - disparately impacts Defendant WACHOVIA's minority borrowers.

36.    While Defendant WACHOVIA's use of a common credit policy for all loan applicants might appear to be racially neutral, Defendant WACHOVIA's use of yield spread premiums and other discretionary fees disproportionately and adversely affects minorities (relative to similarly situated non-minorities). Defendant WACHOVIA's credit policy causes minorities to pay disparately more discretionary finance charges than similarly situated non-minorities.  As the HMDA data cited herein indicates, minorities are substantially more likely than similarly situated non-minorities to pay such charges.

37.    Defendant WACHOVIA's credit policy is in fact intentionally discriminatory.  As described above, Defendant WACHOVIA's credit pricing policy by design discriminates against minority borrowers and directly causes this disparate impact.

## III.    DEFENDANT WACHOVIA IMPOSED DISCRIMINATORY FEES ON PLAINTIFFS

38.    Defendant WACHOVIA's discriminatory credit pricing policy directly damaged Plaintiffs.

**Facts relating to Zamora:**

39.    In July, 2005, plaintiff Leticia Zamora refinanced her home located at 1165 Orchid St., Livermore, CA.  She engaged the services of mortgage broker

9

1  Carlos Alfaro of Allfund Mortgage, who solicited her and her husband, Javier

2  Zamora, at their home, to assist them with the transaction.  World Savings Bank

3  was the lender on the Zamoras' original loan and also on the refinance.

4       40.     Zamora purchased a 30-year, adjustable-rate mortgage loan in the

5  principal amount of $470,000 with an initial interest rate of 6.142% (an APR of

6  6.253%).  In connection with this transaction, Zamora was required to pay

7  Universal Home Loans a "mortgage broker fee" of $5,450.00 paid out of the

8  proceeds of the loan, *and* a "broker fee" of $9,400.00 which was paid outside of

9  closing (POC).  Zamora also paid several hundred dollars in loan processing fees to

10 World Savings.  On information and belief, the broker fees were assessed pursuant

11 to Defendant WACHOVIA's standard credit pricing policies.

12      41.     The Zamoras are primarily Spanish-speaking, and WACHOVIA knew

13 that they were minority borrowers.  Among other things, Mr. Alfaro had told them

14 that he was a Christian who was trying to help Latinos get better loans.

15 **Facts relating to Perez:**

16      42.     In March-April 2007, plaintiffs Daniel and Elizabeth Perez, husband

17 and wife, refinanced their residence located at 11926 S. 38th Ave., Laween, Arizona

18 85339.  Approximately $339,000 of the proceeds were used to pay off Perez's prior

19 mortgage with M&I Marshall & Ilsley Bank, and $83,000 was used to satisfy other

20 debts.  They engaged the services of a mortgage broker, Spectrum Financial, to

21 assist them with the transaction.  World Savings Bank refinanced and funded the

22 loan.

23      43.     Perez purchased a loan in the principal amount of $423,750.  In

24 addition to hundreds of dollars in "redrawing" and processing fees paid to World

25 Savings, Perez was charged a $998.00 "mortgage broker fee" which was paid to

26 Spectrum Financial out of the proceeds of the loan, and a "broker fee" of $8,475.00

27 – 2% of the proceeds – which paid out of closing.

28

FIRST AMENDED CLASS ACTION COMPLAINT, Case No. 3:07-CV-4603

44.    Mr. and Mrs. Perez also refinanced a second loan secured by their property located at 3841 E. Calle Poco, Laween, AZ 85339.  Of the $343,000 principal amount of this loan, approximately $175,000 was to pay off the Perez's prior loan with National Bank of Arizona.  In connection with this transaction, Perez was required to pay a $3,430.00 "loan origination fee," a $498 "processing fee," and a $75 "broker application fee" to Core Mortgage LLC.  The HUD-1 Settlement Statement associated with the transaction states that the lender also paid a $2,572.50 "yield spread" premium to Core Mortgage outside of the closing.

45.    Mr. and Mrs. Perez are primarily Spanish-speaking, and WACHOVIA knew that they were minority borrowers.

46.    As a result of Defendant WACHOVIA's discriminatory conduct, Plaintiffs received loans on worse terms with higher costs than similarly situated non-minority borrowers.

## CLASS ACTION ALLEGATIONS

47.    Plaintiffs repeat and re-allege each allegation above as if set forth herein in full.

48.    This class action is brought pursuant to ECOA, the FHA and the Civil Rights Act by Plaintiffs on behalf of themselves and all minority borrowers (the "Class") who entered into residential mortgage loan contracts that were financed or purchased by Defendant WACHOVIA, and who were harmed by Defendant's discriminatory conduct.

49.    Plaintiffs sue on their own behalf, and on behalf of a class of persons under Rule 23(a) and (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure.

50.    Plaintiffs do not know the exact size of the Class or identities of the members of the Class, since that information is in the exclusive control of Defendant WACHOVIA.  Plaintiffs believe that the Class includes many thousands, or tens of thousands of individuals, who are geographically dispersed throughout the United States.  Therefore, the Class is so numerous that joinder of all members

11

1    is impracticable.

2        51.    All members of the Class have been subjected to and affected by

3    Defendant WACHOVIA's practice of assessing yield spread premiums and other

4    discretionary fees on mortgage loans.  There are questions of law and fact that are

5    common to the Class, and that predominate over any questions affecting only

6    individual members of the Class.  These questions include, but are not limited to the

7    following:

8        a.    the nature and scope of Defendant WACHOVIA's policies and

9            procedures concerning the assessment of yield spread premiums and

10            other discretionary fees on mortgage loans it funds;

11        b.    whether Defendant WACHOVIA discriminated against Class

12            Members by charging them higher interest, fees, and costs, than

13            Defendant WACHOVIA charges similarly situated non-minority

14            borrowers;

15        c.    whether Defendant WACHOVIA's intent in its discriminatory policies

16            and procedures was racially motivated;

17        d.    whether Defendant WACHOVIA can articulate any legitimate non-

18            discriminatory reason for its policies and procedures;

19        e.    whether Defendant WACHOVIA and its subsidiaries are creditors

20            under the ECOA because, in the ordinary course of business, they

21            participate in the decision of whether or not to extend credit to

22            consumers;

23        f.    whether Defendant WACHOVIA's policies and procedures regarding

24            yield spread premiums and other discretionary fees have a disparate

25            impact on minority borrowers;

26        g.    whether Defendant WACHOVIA has any business justification for its

27            policies and procedures.

28

h.    whether there is a less discriminatory alternative to these policies and procedures;

i.    whether Defendant WACHOVIA devised and deployed a scheme or common course of conduct that acted to deceive Plaintiffs and members of the Class;

j.    whether the Court can enter declaratory and injunctive relief; and

k.    the proper measure of disgorgement or monetary relief.

52.    Plaintiffs' claims are typical of the claims of the Class, and do not conflict with the interests of any other members of the Class in that both Plaintiffs, and the other members of the Class, were subjected to the same yield spread premiums and other discretionary fees that have disproportionately affected minority borrowers.

53.    Plaintiffs will fairly and adequately represent the interests of the Class. Plaintiffs are committed to vigorous prosecution of the Class's claims, and have retained attorneys who have extensive experience in consumer protection and credit discrimination actions and in class actions.

54.    Defendant WACHOVIA has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

55.    A class action is superior to other methods for the speedy and efficient adjudication of this controversy. A class action regarding the issues in this case does not create any problems of manageability.

## ACCRUAL, FRAUDULENT CONCEALMENT, CONTINUING VIOLATION, AND EQUITABLE TOLLING

56.    Plaintiffs and Class Members did not know, and could not reasonably have known, that they would receive from Defendant WACHOVIA mortgage loans with worse terms and higher costs and fees than non-minorities.  Their claims did not accrue until shortly before the filing of this action.

13

57.    Defendant WACHOVIA's discriminatory conduct was inherently self-concealing.  Defendant WACHOVIA knew that Plaintiffs and Class Members could not determine the relationship between the terms, fees, and costs of their loans to those available to non-minorities, or to the services that WACHOVIA and its contracted mortgage brokers provided.  Defendant WACHOVIA has superior knowledge about the terms, fees, and costs of its loans, and knew that the terms, fees and costs provided to minorities, unbeknownst to them, were substantially worse than the loans provided to non-minorities.

58.    Defendant WACHOVIA has not released or provided information about its discrimination against Plaintiffs and Class Members, and has actively and fraudulently concealed its discriminatory practices.

59.    As a result of the foregoing, Plaintiffs and Class Members in the exercise of due diligence could not have reasonably discovered the discriminatory practices, and did not do so until just recently.  For the reasons alleged above, the members of the Class still do not know that they have been and continue to be injured by Defendant WACHOVIA's discriminatory conduct.

60.    Defendant WACHOVIA's discriminatory conduct is continuing in nature, and Defendant WACHOVIA has committed discriminatory acts throughout the limitations period.  Class members whose loans include higher interest rates due to WACHOVIA's discrimination continue to be harmed every time an interest payment becomes due on such loans.  Other Class members have contracted with WACHOVIA, and been subject to the identical discriminatory practices, within the applicable period of limitations.

61.    There is a substantial nexus between the acts of discrimination occurring within the limitation periods prior to filing suit, and the acts of discrimination before that time.  The acts involve the same type of discrimination and are recurring, not isolated events.

1    62.    Defendant WACHOVIA specifically misled Plaintiffs and Class

2    Members into believing that the mortgage-related terms, fees, and costs they were

3    offered were fair, reasonable, and the same as offered to non-minorities, and took

4    steps to conceal its fraudulent and unfair conduct.

5    63.    The statute of limitations applicable to any claims that Plaintiffs or

6    other Class Members have brought or could bring as a result of the unlawful and

7    fraudulent concealment and course of conduct described herein, have been tolled as

8    a result of Defendant WACHOVIA's fraudulent concealment.  In addition,

9    Plaintiffs and the Class did not and could not have discovered their causes of action

10    until the time alleged below, thereby tolling any applicable statute of limitations.

11    <u>**COUNT I**</u>

12    <u>**VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT**</u>

13    <u>**(15 U.S.C. §§ 1691 - 1691f)**</u>

14    64.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1

15    through 63 above as if fully set forth herein.

16    65.    Defendant WACHOVIA engages in credit transactions through its

17    offering, granting, and purchasing of residential mortgage loans.

18    66.    By imposing higher interest rates and other discretionary fees on

19    residential mortgage loans to Plaintiffs and Class Members than it imposed on non-

20    minority mortgage borrowers, Defendant WACHOVIA has discriminated against

21    Plaintiffs and members of the Class with respect to a credit transaction on the basis

22    of race in violation of the ECOA.  15 U.S.C. § 1691(a).

23    67.    In addition, Defendant WACHOVIA's pricing policies and procedures

24    (including yield spread premiums), which provide financial incentives to its

25    mortgage brokers and correspondent lenders to make subjective decisions to

26    increase interest rates and charge additional fees and costs, have a disparate impact

27    on Plaintiffs and Class Members.

28

15

1    68.    As a proximate result of Defendant WACHOVIA's violation of 15

2    U.S.C. § 1691, Plaintiffs and members of the Class have been injured and are

3    entitled to injunctive and declaratory relief and damages, or make whole equitable

4    relief.

5    69.    In addition, Defendant WACHOVIA's conduct as alleged herein was

6    intentional, willful, wanton, reckless, malicious, outrageous, or otherwise

7    aggravated beyond mere negligence.  Defendant WACHOVIA acted with malice

8    and reckless indifference to the federally protected rights of Plaintiffs and members

9    of the Class.  As a result, Plaintiffs and members of the Class are entitled to

10    punitive damages.

11    70.    Moreover, Defendant WACHOVIA continues to discriminate in

12    violation of the ECOA against Class Members every time Defendant WACHOVIA

13    provides a home mortgage loan as described herein.  If not enjoined from such

14    violation by the Court, Defendant WACHOVIA will continue to engage in conduct

15    that disregards the rights of Plaintiffs and members of the Class, and cause

16    Plaintiffs and members of the Class irreparable injury for which there is no

17    adequate remedy at law.  15 U.S.C. § 1691(e).

18    71.    Plaintiffs and members of the Class ask this Court to declare the rights

19    of the parties herein regarding Defendant WACHOVIA's obligation to participate

20    in credit transactions without discriminating against applicants for credit on the

21    basis of the applicants' race.

22                              **COUNT II**

23                      **RACIAL DISCRIMINATION**

24                        **(42 U.S.C. § 1981)**

25    72.    Plaintiffs repeat, re-allege, and incorporate the allegations contained in

26    paragraphs 1 through 63 above as if fully set forth herein.

27    73.    Defendant WACHOVIA intentionally discriminated against Plaintiffs

28    and Class Members by charging higher interest rates and other fees and costs than

were charged to similarly situated non-minority borrowers.

74.    Defendant WACHOVIA unlawfully discriminated against Plaintiffs and Class Members in (i) formation of contracts, (ii) making, performance, modification, and termination of contracts, (iii) the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship, and/or (iv) conduct that interferes with the right to establish and enforce contract obligations.

75.    Defendant WACHOVIA's actions violate 42 U.S.C. § 1981, as well as the rights of Plaintiffs and the Class under the Fifth, Thirteenth, and Fourteenth Amendments to the Constitution of the United States.

76.    Plaintiffs and Class Members are entitled to injunctive and declaratory relief and damages, or make whole equitable relief as a result of Defendant WACHOVIA's discriminatory conduct.

77.    At no time has Defendant WACHOVIA undertaken corrective action to ameliorate its racially discriminatory practices. Defendant WACHOVIA continues to reap the profits of its discriminatory practices and continues to discriminate. Defendant WACHOVIA's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence. Defendant WACHOVIA has acted with malice and reckless indifference to the federally protected rights of Plaintiffs and members of the Class. As a result, Plaintiffs and members of the Class are entitled to punitive damages.

## COUNT III
## RACIAL DISCRIMINATION
### (42 U.S.C. § 1982)

78.    Plaintiffs repeat, re-allege, and incorporate the allegations contained in paragraphs 1 through 63 above as if fully set forth herein.

79.    Section 42 U.S.C. §1982 provides that all citizens of the United States "shall have the same right, in every State and Territory, as is enjoyed by White citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal

17

1  property."

2      80.    Defendant WACHOVIA has discriminated against Plaintiffs and the

3  Class with respect to their home mortgage loans by charging Plaintiffs and the

4  Class higher interest rates and other discretionary fees than Defendant

5  WACHOVIA has charged similarly situated non-minority consumers.  As a result

6  of Defendant WACHOVIA's conduct, Plaintiffs and the Class have not had the

7  same right as Caucasians to inherit, purchase, sell, hold, and convey real property.

8  Defendant WACHOVIA has thereby violated 42 U.S.C. § 1982.

9      81.    Defendant WACHOVIA's violation of 42 U.S.C. § 1982 was

10  intentional and malicious.

11      82.    As a proximate result of Defendant WACHOVIA's violation of 42

12  U.S.C. § 1982, Plaintiffs and members of the Class have been injured, and are

13  entitled to injunctive and declaratory relief and damages, or make whole equitable

14  relief.  In addition, Defendant WACHOVIA's conduct as alleged herein was

15  intentional, willful, wanton, reckless, malicious, outrageous, or otherwise

16  aggravated beyond mere negligence.  Defendant WACHOVIA acted with malice

17  and reckless indifference to the federally protected rights of Plaintiffs and members

18  of the Class.  As a result, Plaintiffs and members of the Class are entitled to

19  punitive damages.

20                          **COUNT IV**

21          **VIOLATION OF THE FAIR HOUSING ACT**

22              **(42 U.S.C. §§ 3601 – 3619)**

23      83.    Plaintiffs repeat, re-allege and incorporate the allegations in paragraphs

24  1 through 63 above as if fully set forth herein.

25      84.    Mortgage lending and the providing of residential mortgage loans is a

26  "residential real estate-related transaction" within the meaning of the FHA.  42

27  U.S.C. § 3605(b).

28  / / /

                            18

85.     By imposing higher interest rates and other discretionary fees on residential mortgage loans to Plaintiffs and Class Members than it imposed on non-minority mortgage borrowers, Defendant WACHOVIA has discriminated against Plaintiffs and members of the Class concerning their ability to participate in real estate-related transactions, and in the terms and conditions of such transactions, in violation of the FHA.  42 U.S.C. § 3605(a).

86.     In addition, Defendant WACHOVIA's pricing policies and procedures (including yield spread premiums), which provide financial incentives to its mortgage brokers and correspondent lenders to make subjective decisions to increase interest rates and charge additional fees and costs, had a disparate impact upon Plaintiffs and Class Members.

87.     As a proximate result of Defendant WACHOVIA's violation of 42 U.S.C. § 3605, Plaintiffs and members of the Class have been injured and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.

88.     In addition, Defendant WACHOVIA's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence.  Defendant WACHOVIA acted with malice and reckless indifference to the federally protected rights of Plaintiffs and members of the Class.  As a result, Plaintiffs and members of the Class are entitled to punitive damages.

89.     Moreover, Defendant WACHOVIA continues to discriminate in violation of the FHA against members of the Class every time Defendant WACHOVIA provides a home mortgage loan as described herein.  If not enjoined from such violation by the Court, Defendant WACHOVIA will continue to engage in conduct that disregards the rights of Plaintiffs and members of the Class, and cause Plaintiffs and members of the Class irreparable injury for which there is no adequate remedy at law.  42 U.S.C. § 3613(c).

90.    Plaintiffs and members of the Class ask this Court to declare the rights of the parties herein regarding Defendant WACHOVIA's obligation to participate in credit transactions without discriminating against applicants for credit on the basis of the applicants' race.

## COUNT IV

## PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Plaintiffs request the following relief:

A.    An order determining that the action is a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    A judgment awarding Plaintiffs and Class Members costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

C.    A judgment granting extraordinary equitable and/or injunctive relief as permitted by law or equity, including rescission, restitution, reformation, attaching, impounding, or imposing a constructive trust upon, or otherwise restricting, the proceeds of Defendant's ill-gotten funds to ensure that Plaintiffs and Class Members have an effective remedy;

D.    A judgment awarding Plaintiffs and Class Members compensatory damages according to proof;

E.    A judgment awarding punitive damages to Plaintiffs and Class Members;

F.    A judgment granting declaratory and injunctive relief and all relief that flows from such injunctive and declaratory relief; and

/ / /

/ / /

/ / /

/ / /

1    G.    A judgment or other order granting such other and further relief as the

2  Court deems just and proper including, but not limited to, recessionary relief and

3  reformation.

4    DATED this 27th day of September, 2007.

5                                            Respectfully submitted,

6                                            CHAVEZ & GERTLER, L.L.P.

7                                            BONNETT, FAIRBOURN, FRIEDMAN
8                                             & BALINT, P.C.

9                                            LERACH, COUGHLIN, STOIA, GELLER
10                                            RUDMAN & ROBBINS, LLP

11                                           HOUSING AND ECONOMIC RIGHTS
12                                            ADVOCATES

13

14

15                                           By:  Nance F. Becker

16                                           Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

Dated: September 27, 2007                    Respectfully submitted,

CHAVEZ & GERTLER, L.L.P.

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.

LERACH, COUGHLIN, STOIA, GELLER
RUDMAN & ROBBINS, LLP

HOUSING AND ECONOMIC RIGHTS
ADVOCATES

By:  Nance F. Becker

Attorneys for Plaintiffs

*Additional Counsel:*

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
Andrew S. Friedman (to seek pro hac vice admission)
Wendy J. Harrison (CA 151090)
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: (602) 274-1100
afriedman@BFFB.com
wharrison@BFFB.com

LERACH, COUGHLIN, STOIA, GELLER          Maeve Elise Brown (CA SBN 137512)
RUDMAN & ROBBINS, LLP                    HOUSING AND ECONOMIC RIGHTS
John Stoia (CA SBN 141757)               ADVOCATES
Ted Pintar (CA SBN131372)                P.O. Box 29435, Oakland, CA 94604
655 W. Broadway, Suite 1900              1305 Franklin St., Ste. 305, Oakland CA
San Diego, CA  92101                     94612
Telephone: (619) 231-1058                Telephone: 510-271-8443
TedP@csgrr.com                           melisebrown@heraca.org
jstoia@lerachlaw.com

22

## PROOF OF SERVICE
### (C.C.P. §1013a(3))

STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF MARIN            )

I am employed in the County of Marin, State of California. I am over the age of 18 years and not a party to the within action; my business address is Chavez & Gertler LLP, 42 Miller Avenue, Mill Valley, CA 94941.

On September 27, 2007, I served the foregoing documents:

- **FIRST AMENDED CLASS ACTION COMPLAINT FOR: Violations of the Equal Credit Opportunity Act; Violations of the Fair Housing Act; Violations of the Civil Rights Act, 42 U.S.C. §1981; Violations of the Civil Rights Act, 42 U.S.C. §1982**

on the interested parties in this action by placing a true copy thereof enclosed in a sealed Federal Express envelope addressed to each as follows:

Joyce Camp, Paralegal                    Beerly Enjaian
Wachovia Corporation                     Legal Department
301 South College Street                 World Savings Bank
Suite 4000                               1901 Harrison Street
Charlotte, NC  28288-0013                Oakland, Ca  94612

[X]    **BY FEDERAL EXPRESS:** The above mentioned documents were served on the interested parties in this action by depositing them in a box or other facility regularly maintained by Federal Express, or delivering it to an authorized carrier or driver authorized by Federal Express to receive documents, in an envelope or package designated by Federal Express with delivery fees paid or provided for, addressed to the person to be served at the address shown below.

Executed on September 27, 2007, at Mill Valley, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
Cate L. Coelho